IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| STEERING COMMITTEES OF | * | |
| LAKE ROAD & LA PALOMA | | |
| PROJECT LENDERS, | * | |
| | | |
| Plaintiffs/Appellants, | * | |
| | | |
| v. | * | Civil Action No. AW-06-766 |
| | | |
| NATIONAL ENERGY & GAS | * | |
| TRANSMISSION, INC., | | |
| | * | |
| | | |
| Defendant/Appellee. | * | |

*******

## MEMORANDUM OPINION

The steering committees of Lake Road and La Paloma Project Lenders, acting on behalf of certain lenders (collectively, the "Lenders" or "Appellants") to the Lake Road and La Paloma projects, bring this appeal from an Order of the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") disallowing approximately $101 million of their unsecured claims against National Energy & Gas Transmission, Inc. ("NEGT" or the "Debtor"). In this Order, the Bankruptcy Court held that the $101 million that the Lenders sought was not recoverable because this figure represented postpetition interest and attorney's fees. This Court has reviewed the entire record and has carefully examined the parties' submissions, and "the decisional process would not be significantly aided by oral argument." Fed. R. Bankr. P. 8012. For the reasons that follow, this Court will affirm *in part* and vacate *in part* the Bankruptcy Court's ruling.

## FACTUAL & PROCEDURAL BACKGROUND

NEGT was an integrated energy company, which operated its business through wholly-owned subsidiaries. NEGT used certain of these subsidiaries to finance the construction of the Lake

Road  and La Paloma power generation facilities.  Although NEGT subsidiaries owned the Lake Road and La Paloma projects (the "Projects"), NEGT guaranteed its subsidiaries' obligations to the Lenders for these two projects.

Before the completion of either project, NEGT filed for chapter 11 bankruptcy protection on July 8, 2002.  The entities that directly owned the Projects, however, have not filed voluntary petitions for chapter 11 relief. Parties appear to agree that, at least initially, NEGT delayed transferring the Projects to the Lenders to preserve certain favorable tax treatment and that NEGT's continued possession of these projects during the pendency of the bankruptcy case would increase the recoveries for all of NEGT's creditors.     At some point, the Lenders decided to take possession of the Projects before the termination of NEGT's bankruptcy case.

In connection with the bankruptcy case, Citibank, N.A., as administrative and security agent for the Lenders, filed a proof of claim against NEGT in the amount of $623,909,778.81, plus additional unliquidated and contingent amounts.  In March of 2004, NEGT and the Lenders entered into a stipulation (the "Stipulation") to transfer the Projects to the Lenders.  The Court approved the Stipulation on March 15, 2004, thereby allowing the Lenders to take possession of the Projects.  The Stipulation also provided that the Lenders would keep all prepetition expense deposits, which totaled approximately $2 million.  After obtaining the Bankruptcy Court's approval of the transfer, NEGT and the Lenders continued to negotiate the definitive documentation for the conveyance.

On May 23, 2004, the Bankruptcy Court confirmed the Debtor's Third Amended Plan of Reorganization (the "NEGT Plan"), which became effective on October 29, 2004.  The Plan classified the Lenders' unsecured claims as Class 3 Lake Road and La Paloma Project Guarantee Claims.  Pursuant to Schedule 4.03 of the NEGT Plan, the Lake Road Guarantee Claim was allowed

in the amount of $238,908,487.38 and the La Paloma Guarantee Claim was allowed in the amount of $385,001,291.45.  With respect to postpetition expenses and interest, Schedule 4.03 stated that Lenders' Class 3 claims "may be increased by the amount of unpaid interest and all amounts payable in connection with the obligations due and owing under the applicable documents subject to (i) any limitations contained in such documents and (ii) applicable law, as determined by the Bankruptcy Court."

NEGT ultimately transferred the Projects to the Lenders in September of 2004 and October of 2004.  Appellants allege that in or about August 2004, the Lenders' steering committees contacted NEGT to discuss the inclusion of postpetition interest and expenses in the Lake Road and Paloma Projects Guarantee Claims.  Specifically, the Lenders sought to include the following amounts in their earlier guarantee claims: (i) $90,872,297.29 in tranche A loan interest accrued under the operative credit documents for the Projects from July 8, 2003 through the respective transfer dates of the Projects ("Interest Claim") and (ii) $10,616,672.14 in expenses, including fees for legal, consulting, and financial services, incurred by the Project companies after July 8, 2003 ("Expenses Claim").  While counsel for both the Lenders and NEGT discussed the Interest Claim and Expenses Claim, they did not reach a resolution.  As a result, on November 14, 2005, the Lenders sent a demand to NEGT's counsel for the inclusion of these claims.  In response, NEGT filed a motion to disallow the Lenders' additional claims, which the Bankruptcy Court granted on February 21, 2006. This appeal ensued.

**STANDARD OF REVIEW**

A district court, sitting as an appellate court in bankruptcy, reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law are reviewed *de novo*. Fed. R. Bankr. P. 8013;[1] *see also First Nat'l Bank of Md. v. Stanley (In re Stanley)*, 66 F.3d 664, 667 (4th Cir. 1995). In matters of equity, a district court will not reverse a bankruptcy court's determination unless it finds that the bankruptcy court has abused its discretion. *Uwimana v. Rwanda (In re Uwimana)*, 284 B.R. 218, 220 (D. Md. 2002)

**DISCUSSION**

The Lenders have advanced various arguments in support of their position that the Bankruptcy Code allows their claims for both interest and expenses for the Projects. Because the Code draws a distinction between interest and expenses, the Court will analyze these arguments by addressing the Interest Claim and Expenses Claim separately.

I.      Lenders' Interest Claims

Generally, the Bankruptcy Code bars unsecured creditors from collecting postpetition interest on their claims.[2] This prohibition is found in Section 502(b)(2), which states that:

---

[1] Rule 8013 of the Federal Rules of Bankruptcy Procedure provides, in relevant part:

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Fed. R. Bankr. P. 8013.

[2] Under the Bankruptcy Code, a claim is defined as:
    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

> [T]he court, after notice and a hearing, shall determine the amount of
> such claim in lawful currency of the United States as of the date of
> the filing of the petition, and shall allow such claim in such amount,
> except to the extent that . . . such claim is for *unmatured interest.*

11 U.S.C. § 502(b)(2) (emphasis added).

Attempting to circumvent the stricture of Section 502(b)(2), the Lenders contend that their

Interest Claim should not be characterized as one for "unmatured interest," but rather as a prepetition

indemnification claim.  The Lenders do not dispute that the Bankruptcy Code would not allow them

to recover any postpetition interest if the interest accrued on direct obligations of NEGT, regardless

of whether a contract provides for the accrual of such interest.  *See, e.g.,United Sav. Ass'n v.*

*Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372-73 (1988) (citing Section 502(b)(2) and

explaining that "Since [506(b)] permits postpetition interest to be paid only out of the 'security

cushion,' the undersecured creditor, who has no such cushion, falls within the general rule

disallowing postpetition interest."); *Kucin v. Devin*, 251 B.R. 269, 273 (D. Md. 2000) (affirming a

bankruptcy court's calculation of claim to exclude an undersecured creditor's claim for postpetition

interest even though interest would accrue on the debtor's obligation under the parties' contractual

agreement); *see also Ramada Franchise Systems, Inc. v. Bhagat*, 7 F.3d 225 (4th Cir. 1993)

(unpublished) (same).  Therefore, in essence, the Lenders argue that they may make a claim for

postpetition interest because the interest accrued on direct obligations of the non-Debtor project

---

> (B) right to an equitable remedy for breach of performance if such
> breach gives rise to a right to payment, whether or not such right to
> an equitable remedy is reduced to judgment, fixed, contingent,
> matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

companies.

Neither the text of the Bankruptcy Code nor the relevant caselaw, however, provides support for this strained interpretation of Section 502(b)(2).  It is well settled that when a statute's language leaves little ambiguity "the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms."  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6 (2000) (internal quotation marks omitted) (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989) (in turn quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917)).  Indeed, the Supreme Court has emphasized the application of this ancient rule in the bankruptcy context in the recent case of *Lamie v. U.S. Trustee,* 540 U.S. 526, 534 (2004).

Section 502(b)(2) sets forth that a bankruptcy court may not allow a claim if "such claim is for unmatured interest."  This language does not suggest that the bankruptcy court should limit the application of this provision to interest accruing on the obligations of the debtor.  A more natural reading of Section 502(b)(2) section is that it bars an unsecured creditor from recovering interest on any type of claim, including an indemnity claim.  Not surprisingly, the Lenders have not cited a single case that holds that Section 502(b)(2)'s prohibition applies *only* to direct obligations of a debtor.  Based on the text of the statute, this Court cannot agree with the Lenders that Section 502(b)(2) should not protect debtor-guarantors.

Several other courts outside this jurisdiction also have reached similar conclusions.  For example, in the case of *In re Loewen Group International, Inc.*, 274 B.R. 427 (Bankr. D. Del. 2002), a District of Delaware bankruptcy court found that Section 502(b)(2) did not allow unsecured creditors to collect post-petition interest from the guarantor of two promissory notes.  Deciding to

6

disallow these claims, the Court reasoned that "Section 502(b)'s purpose of assuring the equal of treatment of similarly-situated creditors will be served by limiting claims asserted against debtor-guarantors in the same manner as claims asserted against debtor-obligors."  *Id.* at 442; *see also JPMorgan v. U.S. Bank National Assoc. (In re Oakwood Homes Corp.)*, 2005 WL 440798 (D. Del. Feb. 17, 2005).

   To the extent that the facts of that case differ from the case at bar, this Court finds that these differences do not render *In re Loewen Group* inapposite.  While it is true that *In re Loewen* concerned the principal on a non-interest bearing promissary note, in that case, as here, the dispute concerned whether the creditors could recover interest that would accrue postpetition.  Likewise, this Court remains unpersuaded that the fact that both the primary obligor and guarantor were debtors in *In re Loewen Group* distinguishes that case from the one *sub judice*.

   Fourth Circuit precedent on Section 502(b)(6) further bolsters this reading of Section 502(b)(2).  Section 502(b)(6) places a cap on the amount a landlord may recover from a debtor for damages resulting from the termination of a lease.  11 U.S.C. § 502(b)(6).  The majority of courts have held that the Section 502(b)(6) cap applies to a guarantor of a lease just as it would to the leaseholder.  *See, e.g.*, *In re Henderson*, 297 B.R. 875, 885 (Bankr. M.D. Fla. 2003); *In re Episode USA, Inc.*, 202 B.R. 691, 694-95 (Bankr. S.D.N.Y. 1996).  In accord with the "overwhelming of courts," the Fourth Circuit ruled, in an unpublished decision, that a lessor could not make a claim in excess of Section 502(b)(6)'s cap against a lease guarantor.  *Cutler v. Lindsey (In re Lindsey)*, 1997 WL 705435, at *3 (4th Cir. 1997) *aff'g in part* 199 B.R. 580 (E.D. Va. 1996).  Similar to Section 502(b)(6), Section 502(b)(2)'s limitation is not directed at any particular entity, either the obligor or the guarantor.  Furthermore, recognizing a distinction between guarantors and primary

7

obligors would undermine the overarching purpose of the Bankruptcy Code of ensuring the equitable distribution of the debtor's remaining assets among creditors. *Begier v. IRS*, 496 U.S. 53, 58 (1990). For this reason, as well as those detailed above, this Court finds that the Bankruptcy Court correctly disallowed the Lenders' Interest Claim.

II.    Lenders' Expenses Claim

Concerning the Lenders' claims for expenses and attorney's fees, the Bankruptcy Court found, as a matter of law, that 11 U.S.C. § 506(b) prohibited such claims. Section 506(b) provides that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).

Several courts, including those in this jurisdiction, have held that this section evinces Congress's intent to allow only secured creditors to recover postpetition expenses and fees. *See, e.g., In re Smith*, 206 B.R. 113 (Bankr. D. Md. 1997). Concluding that the Lenders' claims were for postpetition fees and expenses, the Bankruptcy Court believed that this case fit squarely within the rubric of *In re Smith* and its progeny.

Although the Lenders agree that 506(b) does not permit an unsecured creditor to recover postpetition fees and expenses, they argue that the Bankruptcy Court erred by casting their claim as one for postpetition expenses. Instead, the Lenders contend that because they seek fees and expenses under a contract executed prior to the petition date, their claim is actually a contingent claim under a prepetition indemnification agreement.

8

As opposed to a postpetition claim for fees, an unliquidated contingent right to payment arising out of a prepetition contract is not subject to disallowance under Section 506. *In re Smith*, the case upon which the Bankruptcy Court relies, explains that:

> The amount of the allowable pre-petition claim is determined in accordance with any pre-petition agreement or contract between a debtor and creditor and applicable state law.  Thus, where a pre-petition contract is the basis for a claim and contains an agreement between the parties which obligates the debtor to pay the creditor's attorney's fees reasonably incurred under the terms of such contract, such fees for pre-petition services are includable as a part of the allowed claim in a Chapter 13 case.

*In re Smith*, 206 B.R. at 115; *see also Woburn v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1, 8 (1st Cir. 1992) ("the term 'claim' is broad enough to encompass an unliquidated, contingent right to payment under a prepetition indemnification agreement executed by the debtor); *In re THC Financial Corp.*, 686 F.2d 799, 802-804 (9th Cir. 1982) (same); *In re Sakowitz, Inc.*, 110 B.R. 268, 270 (Bankr. S.D. Tex. 1989) (same).  *Insurance Company of North America v. Sullivan*, 333 B.R. 55 (D. Md. 2005), extended this reasoning and held that Section 506(b) does not bar contingent prepetition claims made by an unsecured creditor even though the triggering contingency did not occur until after the filing of the Bankruptcy petition.  *Id.* at 62; *see also In re Hemingway Transport*, 954 F.2d at 8 (same).

This Court finds the analysis of *Insurance Company of North America v. Sullivan* and the cases upon which it relies persuasive and, based on the current record, agrees with the Lenders that its Expenses Claim should be treated as a contingent claim under a *prepetition* contract rather than a postpetition claim.  The Lenders had a right to payment for expenses and fees under NEGT's prepetition agreement to indemnify the expenses accrued by its subsidiaries on the Projects.  The Lenders do not seek general attorney's fees for representation in connection with the bankruptcy

petition, but fees related to the indemnity agreements.[3] Whether the indemnity agreements authorize the Lenders to recover the $10,616,672.14 they claim in expenses, however, remains an open question.  The particular loan documents are not part of the record, and as the Bankruptcy Court is familiar with this case, it sits in a better position to judge the merits of this argument.  Therefore, this Court will remand this matter to the Bankruptcy Court for further proceedings related to interpretation of the applicable documents.

III.    Lenders' Equitable Arguments

Finally, the Lenders assert that the Bankruptcy Court abused its discretion in failing to consider its argument that the equities militate in favor of allowance of its Interest Claim and Expenses Claim.

"[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."  *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206 (1988).  Consequently, as this Court has affirmed the Bankruptcy Court's disallowance of Lenders' Interest Claim, it need not address Lenders' equitable arguments relating to this claim.  In addition, the Lenders have conceded if the Expenses Claim were allowed, the equitable arguments would become moot.  *See* App. Br. 34 n.18.  Before ultimately determining the merits of this claim, the Bankruptcy Court must interpret the loan documents.  Because the Bankruptcy Court has not conducted this inquiry, it would be premature to examine the Lenders'

---

[3]  While this Court's disposition of the Interest Claim and Expenses Claim may seem inconsistent, the Code mandates this result.  While the Code explicitly prohibits an unsecured creditor from recovering "unmatured interest," it remains silent on an unsecured creditor's rights to recover fees based on a prepetition agreement.  *Compare* 11 U.S.C. § 502(b)(2) (which disallows all claims for "unmatured interest") *with* 11 U.S.C. § 506(b) (which enumerates the rights of an "oversecured creditor").

other equitable arguments at this time.

## <u>CONCLUSION</u>

Therefore, for the foregoing reasons, the Judgment of the Bankruptcy Court is AFFIRMED with respect to the Lenders' Interest Claim. With respect to the Lenders' Expenses Claim, this Court VACATES the Bankruptcy Court's decision and REMANDS the issue to the Bankruptcy Court for a determination as to whether the operative loan documents authorize the recovery of attorney's fees and other expenses.  An Order consistent with this Opinion will follow.


Date:   <u>May 10, 2006</u>                              _____/s/_____
                                                        Alexander Williams, Jr.
                                                        United States District Judge